**LAW OFFICE OF STEWART KATZ**
STEWART KATZ, State Bar #127425
GUY DANILOWITZ, SBN 257733
555 University Avenue, Suite 270
Sacramento, California 95825
Telephone: (916) 444-5678

Attorney for Plaintiffs
Michael McMahon and Brian Couch

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL McMAHON and BRIAN COUCH, <br><br> Plaintiff, <br><br> vs. <br><br> CITY OF WEST SACRAMENTO; West Sacramento Police Officer DAVID STALLIONS (Badge #150); Yolo County Sheriff's Deputy LORI OLSON (Badge #112); Yolo County Sheriff's Sergeant AL DOLLAR (Badge # 33);); Yolo County Sheriff's Deputy BRIAN GRIEP (Badge #141); and DOES 1 through 10, inclusive, <br><br> Defendants. <br>_____/ | # <br><br> **COMPLAINT FOR VIOLATION OF CIVIL RIGHTS** <br> **[42 U.S.C. SECTION 1983]** |

Plaintiffs Michael McMahon and Brian Couch complain and allege as follows:

## I. JURISDICTION

1.   This Complaint seeks, inter alia, damages pursuant to Title 42 U.S.C. sections 1983 and 1988, for violation of Plaintiffs' civil rights.  Jurisdiction is founded upon Title 28 U.S.C. sections 1331 and 1343.

///

Complaint for Violation of Civil Rights and State Law                                                                   1

## II. VENUE

2. Plaintiffs' claims, alleged herein, arose in the County of Yolo, California. Therefore, venue lies in the Eastern District of California pursuant to 28 U.S.C. section 1391(b)(2).

## III. INTRODUCTION

3. This is a civil rights complaint arising out of the unnecessary and gratuitous use of a police dog upon plaintiffs in the course of a lawful arrest. Plaintiffs were located hiding in a cable channel in the floor of a building they were vandalizing. The defendant officers located the plaintiffs and while they were being detained at gunpoint, a police dog was directed to bite both plaintiffs, which in fact happened, causing permanent injury to both plaintiffs.

## IV. PARTIES

4. Plaintiff Michael McMahon ("McMahon") is a 60-year old disabled veteran and resident of Sacramento County who suffers from PTSD as a result of his service in Vietnam. He is a resident of Sacramento.

5. Plaintiff Brian Couch ("Couch") is a 42-year old resident of Sacramento.

6. Defendant City of West Sacramento is a political subdivision of the State of California, created and existing by virtue of the laws of the State of California.

7. Defendant David Stallions (Badge #150) was during all times mentioned herein a police officer employed by the City of West Sacramento and acting in the course and scope of his employment. Officer Stallions was the handler of the police dog, "Chance."

8. Defendant Lori Olson (Badge #112) was at all times mentioned herein, a deputy sheriff employed by Yolo County Sheriff's Department acting in the course and scope of her employment.

9. Defendant Brian Griep (Badge #141) was at all times mentioned herein, a deputy sheriff employed by the Yolo County Sheriff's Department acting in the course and scope of that employment relationship.

10.     Defendant Sergeant Al Dollar (Badge #33) was at all times mentioned herein a sergeant employed by the Yolo County Sheriff's Department acting in the course and scope of that employment relationship.

11.     The true names and identities of defendants Does 1 through 10 are presently unknown to plaintiffs. Plaintiffs allege on information and belief that each of defendants Does 1 through 10 were employed by the County of Yolo Sheriff's Department and/or the West Sacramento Police Department at the time of the conduct alleged herein. Plaintiffs allege that defendants Does 1 through 10 participated in the detention of plaintiffs so as to enable the dog attack alleged herein. Plaintiffs will seek to amend this Complaint as soon as the true names and identities of defendants Does 1 through 10 have been ascertained.

12.     Defendants City of West Sacramento; West Sacramento Police Officer David Stallions; Yolo County Sheriff's Deputy Lori Olson; Yolo County Sheriff's Sergeant Al Dollar; Yolo County Sheriff's Deputy Brian Griep and Does 1 through 10, to the extent they engaged in any acts or omissions alleged herein, and unless otherwise indicated by this Complaint, engaged in such acts and/or omissions under color of state law.

## V. FACTUAL ALLEGATIONS

13.     On the outskirts of the City of Davis, CA is a large (26,000 square feet), domed, abandoned, building commonly known as the Davis Transmitter Facility. The building sits on 311 acres which were called the United States Air Force Davis Global Communication Site and was administratively a part of McClellan Air Force Base. It was purportedly used by the NSA for top-secret intelligence activities during the cold war. Prior to this incident, the property went through the lengthy process of reverting back to the State of California due to its deactivation as a military related facility. Presently, the plans are that the building will be demolished.

14.     During the late afternoon of August 30, 2008, plaintiffs McMahon and Couch entered the building for the purpose of removing and converting for their own purposes metals, including brass with scrap value from the facility. This conduct was

criminal and both Couch and McMahon accepted the criminal consequences of their actions.

15.   A citizen who saw indications that someone was illegally in the abandoned building called law enforcement.

16.   Yolo County officers responded to the transmitter facility. Police reports indicate this was at least the third call of this nature within two weeks.  The deputies, under the direction of defendant Sergeant Al Dollar, secured the perimeter of the building and requested a West Sacramento K-9 police dog unit for assistance.

17.   After the canine handler, defendant officer David Stallions, and his police dog, Chance, arrived, the officers made announcements that they would use a police dog to help locate the subjects.  McMahon and Couch, upon realizing that law enforcement was present, concealed themselves in a cable channel cut in the floor and running across the building.  This cable channel was approximately two feet by two feet and was covered by removable steel access plates.

18.   Not surprisingly, the subjects were quickly located, though it is unclear whether it was due to the dog locating the plaintiffs, or the fact that a backpack and loose tools were found next to the cable channel, or that there wasn't any other place to hide.

19.   Officers removed one of the steel plates and first found McMahon, who was wedged face up in the channel.  Officers Olson and Griep, under the supervision of Sergeant Dollar, detained McMahon at gun point. McMahon was told, "Don't move." Plaintiffs have no complaint with any law enforcement conduct up to this point.

20.   After McMahon had surrendered with his hands raised with his body still wedged in the channel, the police dog, who was on a leash, was brought forward and set upon McMahon.  McMahon, under a direct threat of being shot, was forced to endure a gratuitous, vicious mauling by the dog.  K-9 Chance's attack did not occur by happenstance, but, rather, was an intentional act by the defendant officers to summarily punish McMahon.

21. McMahon suffered numerous bite wounds, one of which required six stitches, which is unusual for dog bites. In addition to permanent scarring in several locations, McMahon suffers what is probably permanent nerve damage because of the bites on his arms.

22. Deputy Olson testified that she found the above events, "Exhilarating." (Preliminary Hearing Transcript, Yolo County Criminal Case No. 08-4643, DT 22:14)

23. Very shortly thereafter, Couch was located wedged face down in a nearby section of the channeling. The same scene repeated itself with Couch being held at gun point, ordered not to move and then mauled by Chance. The only significant difference with the attack on Couch was that even if he'd wanted to move and thwart the dog's attack, ignoring the gun aimed at him, he couldn't have because he was wedged face down, essentially stuck, in the channel.

24. Couch also required medical attention and suffered permanent scarring as a result of Chance's attack.

25. While McMahon and Couch were being treated at the hospital for injuries, the defendant officers who accompanied them were so unrestrained in expressing their glee over what had occurred and were so busy taking trophy photos of plaintiffs' injuries with their cellphones, that the medical staff demanded that they take their party elsewhere.

26. It is alleged and believed that the City of West Sacramento has a pattern and practice, though not a written policy, of setting police dogs upon individuals who are either in actual or constructive custody of officers as a punitive measure. The City of West Sacramento is aware of this pattern and practice because of the injuries caused by their dogs and the litigation that this pattern and practice has generated, including, but not limited to, previous lawsuits brought by Robert McAfee (Case No. 2:06-CV-1589-GGH) and by Eduardo De La Torre (Case No. 2:07-CV-01864-FCD-DAD).

///

///

///

# VI. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Unreasonable Search and Seizure/Excessive Force
### (42 U.S.C. Section 1983)
(*Brought against all non-entity defendants*)

27. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 26, as though fully set forth herein.

28. The actions of defendants alleged herein, including but not limited to, causing Chance, a weapon deployed by and controlled by Defendant Stallions and Does 1 through 10, to attack McMahon and Couch, were unreasonable and unnecessary uses of force. Defendants Dollar, Griep, Olson and Does 1 through 10 were an integral part of the dog attacks and the resulting injuries. Such conduct constituted an unreasonable seizure and a use of excessive force which violated their rights as protected by the Fourth Amendment of the United States Constitution.

29. The aforementioned acts and/or omissions of said defendants were malicious, reckless and/or accomplished with a conscious disregard of plaintiffs' rights, thereby entitling plaintiffs to an award of exemplary and punitive damages according to proof.

### SECOND CAUSE OF ACTION
### Entity Liability/Unconstitutional Practices
### (*Monell* claim: Actionable under 42 U.S.C. §1983)
(*Brought against defendant City of West Sacramento*)

30. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 29, as though fully set forth herein.

31. The aforementioned acts, including the use of a police dog, a form of force, were done pursuant to the practices/*de facto* policies of defendant City of West Sacramento which resulted in violating plaintiffs' constitutional rights.

32. As a direct and proximate result of the aforementioned policies and procedures of said defendants, plaintiffs suffered injuries and damages as alleged herein.

### THIRD CAUSE OF ACTION
**Supervisory Liability**
**(42 U.S.C. Section 1983)**
*(Brought against defendant Sergeant Dollar)*

33.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 32, as though fully set forth herein.

34.     The aforementioned acts and/or omissions of the individually named defendants were done as a result of inadequate supervision by Sergeant Dollar.

35.     Sergeant Dollar should have known that his inadequate supervision would result in McMahon's and Couch's constitutional injuries as described herein.

36.     Defendant Dollar tacitly encouraged, ratified and/or approved the unlawful conduct alleged herein and knew or should have known that such encouragement, ratification or approval would result in violations of plaintiffs' constitutional rights.

37.     As a result of this failure to supervise by Sergeant Dollar, plaintiffs McMahon and Couch suffered the injuries as alleged herein.  Sergeant Dollar's acts and/or omissions were willful, intentional, wanton, reckless and/or accomplished with a conscious disregard of McMahon and Couch's rights entitling them to an award of exemplary and punitive damages.

### VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

1.     For compensatory, general and special damages against each defendant, jointly and severally, in the amount proven at trial;

2.     For punitive and exemplary damages against each defendant in an amount appropriate to punish defendants and deter others from engaging in similar misconduct, as allowed by law;

3.     For such other relief, including injunctive and/or declaratory relief, as the Court may deem proper; and

4.     For costs and reasonable attorneys' fees pursuant to 42 U.S.C. section 1988 and as otherwise authorized by statute or law.

Dated: August 27, 2010                              Respectfully submitted,

                                              /s/ Stewart Katz
                                             STEWART KATZ,
                                             Attorney for Plaintiffs